874 So.2d 377 (2004)
Geraldine J. DOUGLAS and Emili Jackson Individually and as the Natural Tutrix of her Minor Child, Travion Jackson, Plaintiffs-Appellants
v.
SHABUBA, INC. d/b/a Queen Mama Food, Frito-Lay, Inc., and Moak Petroleum Products, Inc., Defendants-Appellees.
No. 38,260-CA.
Court of Appeal of Louisiana, Second Circuit.
May 12, 2004.
*379 Raymond Lee Cannon, Tallulah, for Appellants.
Davenport, Files & Kelly, L.L.P. by Carey B. Underwood, Monroe, for Appellee Shabuba, Inc., d/b/a Queen Mama Food.
Plauché, Maselli, Landry & Parkerson, L.L.P. by Joseph Maselli, Jr., New Orleans, for Appellee Frito-Lay, Inc.
Cotton, Bolton, Hoychick & Doughty, L.L.P. by Terry A. Doughty, Rayville, for Appellee Moak Petroleum Products, Inc.
Boles, Boles & Ryan by Patrick Scott Wolleson, Michael Lee DuBos, Monroe, for Appellee State of Louisiana DOTD.
Before PEATROSS, DREW and LOLLEY, JJ.
DREW, J.
From summary judgments dismissing three defendants, the plaintiffs, Geraldine Douglas and Emili Jackson, on behalf of herself and her minor child, Travian Jackson, appealed and complained that the trial court erred in refusing plaintiffs' request for a continuance of the hearing on the Motions for Summary Judgment (MSJ). Plaintiffs also urged that the trial court erred in granting summary judgments in favor of the defendants, Shabuba, Inc. d/b/a Queen Mama Food; Frito-Lay, Inc.; and Moak Petroleum Products, Inc. For the following reasons, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND
Plaintiffs sued for injuries sustained when the Douglas vehicle was struck by another car as Ms. Douglas attempted to drive across U.S. Hwy 65 in Tallulah. On April 4, 2001, Ms. Douglas drove west on East Levee Street and stopped at the intersection of East Levee and South Cedar (U.S.Hwy.65). The Queen Mama store was located at the northeast corner of the intersection to Ms. Douglas' right. Plaintiffs alleged:
 Ms. Douglas' view was blocked by parked Frito-Lay and Budweiser trucks.
 She eased her vehicle back and forth to make sure she could cross the intersection safely.
 Ms. Douglas was accompanied by her minor grandson, Travian Jackson.
 A southbound vehicle driven by James Holden collided with Ms. Douglas' vehicle as she crossed the intersection.
Plaintiffs sued Queen Mama, the store operator, based upon Queen Mama's failure to keep its premises free of obstruction for westbound drivers. Plaintiffs' claim against Frito-Lay was that its delivery vehicle was parked in a way that created an unreasonable risk of harm to plaintiffs. In an amended petition, plaintiffs named DOTD as a defendant for failure to install appropriate traffic control.
In a second amended petition, plaintiffs added[1] as a defendant, Moak, the owner of the premises on which Queen Mama operated its store. Plaintiffs contended that *380 Moak failed to provide appropriate parking and striping in the parking lot, which had no parking places delineated. Further, plaintiffs asserted that Moak failed to keep the premises free of obstructing signs and an unused gas island.
In its MSJ, Moak, the property owner, urged it had no liability for the accident, since plaintiffs averred the collision was caused by the Frito-Lay truck which obstructed her vision. Queen Mama, the store operator, based its MSJ on its claim that plaintiffs could not produce any factual support sufficient to show negligence or fault on the part of Queen Mama.
Frito-Lay's MSJ was accompanied by a memorandum (as were the other two defendants' motions) with attachments which, according to Frito-Lay, showed there were no genuine issues of material fact and it was entitled to summary judgment as a matter of law. DOTD did not file a MSJ.
At the March 18, 2003, hearing, the trial court first denied plaintiffs' motion to continue the hearing. Finding that the three defendants had not breached a legal duty to plaintiffs, the trial court granted the summary judgments and dismissed plaintiffs' claims with prejudice against the three defendants.

DISCUSSION
Continuance
Plaintiffs filed this action on January 4, 2002. On November 13, 2002, the trial court set a March 18, 2003, hearing date on the MSJ. Citing the press of other business and lack of time, the plaintiffs complained that DOTD had responded to discovery requests on February 23, 2003, and that depositions taken on March 6 and March 12 had not been transcribed before the March 18 hearing. In brief, the plaintiffs urged that discovery was attainable in a short time frame and would establish the existence of a legal duty owed by defendants. Specifically, the plaintiffs wanted training materials for the Frito-Lay driver, a deposition of the Queen Mama store clerk, and an affidavit from DOTD that the parking lot was within the DOTD right of way.
The defendants argued that the denial of the continuance was proper and within the trial court's discretion. In their view, plaintiffs made no showing of probable injustice and had ample time to complete their discovery.
A continuance may be granted in any case if there is good ground therefor. La. C.C.P. art. 1601. While parties must be given fair opportunity to carry out discovery, there is no absolute right to delay action on a motion for summary judgment until discovery is completed. Absent peremptory causes, the decision to grant or deny a continuance is within the sound discretion of the trial judge whose ruling will not be disturbed on appeal absent a clear showing of abuse of that discretion. Coleman v. Acromed Corp., 34,354 (La.App.2d Cir.2/7/01), 779 So.2d 1060, writ denied, XXXX-XXXX (La.4/27/01), 791 So.2d 636.
When a MSJ is pending, the only requirement is that the parties be given a fair opportunity to present their claims. Unless plaintiffs show a probable injustice, a suit should not be delayed for discovery when it appears at an early stage that there is no genuine issue of material fact. Berzas v. OXY USA, Inc., 29,835 (La.App.2d Cir.9/24/97), 699 So.2d 1149.
The trial court heard arguments including the chronology of discovery and efforts made by the defendants to accommodate plaintiffs' discovery requests made shortly before the hearing on the MSJ. Queen Mama argued it was willing to stipulate *381 that the truck was legally parked on the parking lot and that plaintiffs' affidavits or potential depositions from a clerk, police, and customers concerning parking problems and prior accidents at the location were true.
The plaintiffs could have sought immediate supervisory review of the denial of the continuance but did not do so. The trial court specifically found that the plaintiffs had adequate time to prepare and made no showing of probable injustice. The action had been pending over 18 months and plaintiffs had four months from the time the court set the hearing on the MSJ to gather additional information. This continuance was properly denied and was within the trial court's discretion.
Motions for Summary Judgment
In Tommie's Novelty v. Velasco, 37,924 (La.App.2d Cir.2/26/04), 868 So.2d 962, this court explained that summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Under La. C.C.P. art. 966(B), a summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.
Although the initial burden on a MSJ remains with the mover to show there is no genuine issue of material fact, once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. An adverse party may not rest on the mere allegations or denials of her pleading, but her response, by affidavits or as otherwise provided above, must set forth specific facts showing a genuine issue of material fact. If she does not so respond, summary judgment, if appropriate, shall be rendered against her. La. C.C.P. art. 967. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. The court must draw those inferences from undisputed facts that are most favorable to the party opposing the MSJ. Tommie's Novelty, supra.
In Goins v. Wal-Mart Stores, Inc., XXXX-XXXX (La.11/28/01), 800 So.2d 783, the supreme court explained that for defendants to prevail on their MSJ and to carry its burden, the defendants must show that there is an absence of factual support for any of the elements of the negligence cause of action. The analyses employ the duty-risk analysis, which involves five elements: (1) that the defendants' conduct was a cause-in-fact of the plaintiffs' injuries; (2) that the defendants' conduct failed to conform to the appropriate standard; (3) that the defendants had a duty to conform their conduct to a specific standard; (4) that the defendants' conduct was a legal cause of the plaintiffs' injuries; and (5) that the plaintiffs suffered actual damages. Goins, supra.
Queen Mama
As to Queen Mama, the store operator, plaintiffs urged:
 Defendants had a duty to protect passing motorists from hazards of congested traffic.
*382  The parking lot had no parking spaces delineated.
 There was a history of accidents at this intersection.
 The store does not sit far enough back from the road and that the lot is extremely narrow to provide adequate parking for the business.
 Signs cemented to the ground at the corner obstructed motorists' vision.
Queen Mama's attorney argued, for purposes of the MSJ, the store operator would stipulate that the truck was parked anywhere the plaintiffs placed it within the parking lot and that the Frito-Lay truck obstructed vision. At her deposition, the Frito-Lay driver stated that she initially pulled the truck to the store's front door and, on the store clerk's direction, moved the vehicle to the location at which it was parked at the time of the accident. The operator of the vehicle which collided with Ms. Douglas' car stated the truck was parked five to ten feet off the roadway. Queen Mama urged that the store did not violate a duty to protect plaintiffs.
On appeal Queen Mama denies that the signs and gas island blocked Ms. Douglas' view and cites Ms. Douglas' own deposition statements that her vision was obscured only by the Frito-Lay truck. Queen Mama also states the MSJ was properly granted in its favor, since the convenience store was not at fault. The truck was parked within the parking lot, and no one testified the truck was illegally parked.
Moak
Plaintiffs also used the same foregoing five grounds against Moak, the property owner. Moak pointed out plaintiffs made no allegations that the store directed where the Frito-Lay truck was to park; plaintiffs limited their complaints against the property owner to inadequate parking area and signs blocking the view. The property owner supported its MSJ with portions of Ms. Douglas' deposition in which she stated that no signs blocked her view, which was obstructed only by the Frito-Lay truck. In addition, there was no evidence that the signs or gas island obscured Ms. Douglas' vision. Moak relied upon the plat submitted by plaintiffs showing the parking lot had 150 feet of frontage on Hwy. 65 and 56.63 feet of frontage on East Levee. Ms. Douglas' own testimony that only the Frito-Lay truck blocked her vision disposed of plaintiffs' claims against Moak, according to the property owner.
Frito-Lay
Plaintiffs state that Frito-Lay violated statutes [La. R.S. 32:143(A)(15) and 32:143(A)(7) ] and improperly parked. Plaintiffs describe the Frito-Lay truck as being "billboard sized."
For purposes of the MSJ, Frito-Lay conceded its truck was parked at Queen Mama at the time of the accident. Arguing that plaintiffs could not meet their burden of proof at trial and had not raised any genuine issue of material fact, Frito-Lay seeks to have the summary judgment in its favor affirmed by this court. Frito-Lay relied on the investigating officer's deposition stating he did not ticket the Frito-Lay truck which was parked on the parking lot, not blocking either street. Citing plaintiffs' failure to present any evidence to support liability, Frito-Lay maintained its truck was parked legally and breached no duty to the plaintiffs. Frito-Lay also noted that the statutes cited by plaintiffs are inapplicable to this situation, since La. R.S. 32:143(A)(7) deals with parking within 20 feet of a flashing beacon stop sign or traffic control signal located at the side of a roadway; La. R.S. 32:143(A)(15) deals with obstruction of a traffic control signal. Neither is applicable here. Moreover, Frito-Lay charged *383 that the accident was caused by Ms. Douglas who stated she couldn't see traffic and drove into the intersection.
Contending that Queen Mama and Moak had a duty to protect persons adjacent to their property, plaintiffs relied on Hakim v. Albritton, 552 So.2d 548 (La.App. 2d Cir.1989) which we distinguish. Decided under the former law on MSJ, Hakim involved an accident which occurred when motorists parked legally and illegally to attend a extraordinary, gigantic sale. The motorist contended that vehicles parked along both streets prevented her from observing the traffic when she stopped at the stop sign. The court found genuine issues of material fact and denied summary judgment in Hakim, since questions remained as to whether the store caused the congestion and whether the congestion was a cause-in-fact of the accident. In contrast, there is no evidence in this record that the Frito Lay truck was illegally parked.
In Carter v. Dr. Pepper Bottling Co. of Baton Rouge, Inc., 470 So.2d 496, 499-500 (La.App. 1st Cir.1985), the court stated:
We know of no statute or jurisprudence which imposes liability on the owner or operator of a vehicle lawfully parked on private property, which obstructs the view of other motorists.... Not every act of negligence gives rise to a cause of action against the negligent party.
Negligence is only actionable where it is both a cause-in-fact of the injury and a legal cause of the injury. Legal cause requires a proximate relation between the actions of a defendant and the harm which occurs, and such relation must be substantial in character.
In Carter, supra, summary judgment was granted to Dr. Pepper, whose truck was parked off the roadway and the location of which was not a cause-in-fact of the accident.
In Washington v. DOTD, 95-14 (La.App. 3d Cir.7/5/95, 663 So.2d 47), writ denied, 95-2012 (La. 11/13/95), 664 So.2d 405, a fatal crash occurred when the driver pulled out at a T-intersection after stopping three or four times and stating she could not see. As the decedent tried to turn left, she was struck by a speeding motorist and killed. The Washington court found that the property owner of the convenience store at the intersection of the fatal collision was entitled to summary judgment because it was not responsible for the Budweiser truck parked on the shoulder or in the parking lot and was not responsible for the placement of a cigarette sign which allegedly obscured the decedent's vision.
The difficulty in resolving this dispute is that the record clearly demonstrates that this was a very congested area through which motorists had to traverse. Notwithstanding questions about which duty did or did not apply in these circumstances, we find that the trial court properly granted the defendants' MSJ and dismissed plaintiffs' case with prejudice.
The bottom line is that Ms. Douglas' own deposition testimony reveals the cause-in-fact of the accident was her decision to drive into the intersection when she did not have a clear view of any approaching traffic. She stated that her vision was not blocked by signs or other vehicles, only by the Frito-Lay truck, which the investigating policeman determined was parked within the confines of the parking lot.
Ms. Douglas described stopping at the stop sign and backing up to get a better view. "So I couldn't see but Iit was a little peephole in between where they had a lottery sign and I peeped and I didn't see nothing, so I came to the stop sign again because it was another car behind *384 me, so I went on. That's when I got hit." Later, Ms. Douglas said: "I didn't backI just backed a little because I was trying to look through a little spot that was in between that sign and another truck was there, but wasn't nothing coming at the time I looked. So I got back to the stop sign. I stopped and tried to see again and I went on out." Ms. Douglas was precise that the only thing blocking her vision was the Frito-Lay truck. By her own admission, Ms. Douglas drove into the intersection without having a clear view of oncoming traffic. As a result of her actions, this crash occurred.

CONCLUSION
After a de novo review of this record, we find that the trial court did not err in granting summary judgments in favor of Shabuba, Inc. d/b/a Queen Mama Food; Frito-Lay, Inc.; and Moak Petroleum Products, Inc. Therefore, the judgment dismissing the plaintiffs' action as to these three defendants is affirmed. Costs are assessed to plaintiffs.
AFFIRMED.
NOTES
[1] In a third amended petition, plaintiffs added Marsala Beverage, LP, as a defendant, since its beer truck was parked there. Plaintiffs later dismissed Marsala without prejudice from the suit.